# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| CRYSTAL A. ANDERSON | CIVIL ACTION NO. 17-1597 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LOUISIANA DEPARTMENT OF TRANSPORTATION & DEVELOPMENT | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Now before the Court is a Motion for Summary Judgment filed by Defendant Louisiana Department of Transportation & Development ("Defendant" or "DOTD"). [Record Document 41]. Plaintiff Crystal A. Anderson ("Plaintiff") has filed an opposition, and Defendant has filed a reply. [Record Documents 60 & 61]. For the reasons discussed below, the Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Plaintiff sets forth the facts of the case as follows.[1] Plaintiff began her employment with Defendant on September 24, 2012, as an "ME O1," a laborer working on a bridge crew that was assigned to repair damaged portions of bridges and roadways in Northwest Louisiana. Record Document 1, ¶s 4 & 5. Plaintiff was the only female and one of the very few African-Americans who worked on a bridge crew in that area. *Id.* at ¶ 6. The bridge crews worked Monday through

---

[1] It is hard to know which, if any, of Plaintiff's alleged facts are disputed by Defendant. Defendant provided the Court with a sparse list of undisputed facts in compliance with Local Rule 56.1. Record Document 41-2. This list of undisputed facts confirmed Plaintiff's job description and placement, stated that she was the only African-American female on the bridge crew, and stated that on May 17, 2016, she was called into a meeting with her supervisors regarding possible "abuse of time" and was offered the opportunity to resign from employment in lieu of possible termination. *Id.*

1

Thursday for 10 hours a day, which allowed Plaintiff to schedule regular doctor's appointments on Fridays.[2] *Id.* at ¶s 7 & 12–13.

During her employment at DOTD, Dennis Rushing ("Rushing") was Plaintiff's immediate supervisor. *Id.* at ¶ 9. In March of 2016, Plaintiff had a doctor's appointment scheduled for Friday, March 11, when Rushing announced on Thursday that the crew would be working that weekend. *Id.* at ¶ 14. Plaintiff rescheduled her doctor's appointment for Friday, March 18. *Id.* The next Thursday, Rushing announced that the crew would be working over the weekend again. *Id.* at ¶ 15. Plaintiff told Rushing that she could not keep rescheduling her doctor's appointments, and he agreed to let her keep the appointment. *Id.* Later that night, Rushing called Plaintiff and instructed her to bring a "doctor's slip" with her when she returned to work on Monday. *Id.* This prompted Plaintiff to call John Tuggle, Jr. ("Tuggle"), her white male co-worker who also needed to be off that Friday, to ask him if he had been ordered to bring a doctor's note to work on Monday. *Id* at ¶ 16. Tuggle stated that he was bringing his girlfriend to a doctor's appointment and was not told to bring any kind of documentation to work. *Id.*

That night, after speaking with Rushing and Tuggle, Plaintiff called Rushing's supervisor, Joshua Bedgood ("Bedgood"), to ask why she was required to provide a doctor's note but Tuggle was not. *Id.* at ¶ 17. Bedgood did not have an answer and stated that he would discuss it with Rushing on Monday. *Id.* Rushing called Plaintiff again on Saturday night to remind her to bring a doctor's note to work. *Id.* That Monday, Rushing explained that Plaintiff needed a doctor's note because she actually saw a doctor whereas Tuggle did not. *Id.* at ¶ 18.

---

[2] Plaintiff states that she is a diabetic and suffers from high blood pressure, which requires her to keep regular appointments with her physician. Record Document 1, ¶ 12. The Court notes that Plaintiff's claims in this lawsuit are based solely on race and gender discrimination, and Plaintiff does not allege any discrimination based on her health conditions

2

Plaintiff claims that during the Spring of 2016, it became apparent that Rushing "wanted [her] gone from the DOTD." *Id* at ¶ 19. Plaintiff alleges that a co-worker told her that Rushing said he wanted her "out of here." *Id.* Plaintiff also states that Rushing told a group of employees that if Plaintiff and Milton Bonaparte ("Bonaparte"), an African-American man that used to be on the bridge crew, were on site at the same time, Rushing would not work an extra shift. *Id.* at ¶ 20. A co-worker also told Plaintiff that Rushing had said that he hoped she would "use all of her time, then when she asked for more time off, he would have an excuse for firing her." *Id.* at ¶ 21. Plaintiff claims that Rushing also purposely assigned her the only DOTD truck without functioning air conditioning and assigned her to drive with James Byson ("Byson"), a fellow employee who was not permitted to drive. *Id.* at ¶ 22. Plaintiff states that being unable to rotate driving duties was unfavorable because the bridge crew "drove large, cumbersome vehicles and it was much more pleasant to merely be a passenger." *Id.*

Plaintiff was terminated for allegedly stealing time from DOTD. *Id.* at ¶ 25. On May 12, 2016, Plaintiff claims that Rushing instructed her and Byson to patch up a bridge about 20 minutes away from where the rest of the crew was working. *Id.* at ¶ 26. Plaintiff states that Rushing told them, "take your time, ride around, I will call you when I need you." *Id.* Plaintiff and Byson finished their assignment and then drove to Lake Ivan to eat lunch. *Id.* at ¶ 27. After arriving at the lake, Rushing called Plaintiff to ask where she was and instructed her to meet the rest of the crew back at the bridge in Minden. *Id.* Rushing then called over the radio and said that the crew was waiting for Plaintiff and Byson at the bridge in Minden. *Id.* Rushing also called Byson on his cell phone to ask where he was. *Id.*

At the work site in Minden, Rushing told Byson that he and Plaintiff were going to be written up, although Rushing provided no reason for the write-up. *Id.* at ¶ 28. After arriving back

at the bridge crew's base in Bossier City, Plaintiff and Byson were called into Rushing's office where he asked, "Did y'all enjoy riding around while the rest of us were out there working?" *Id.* at ¶ 29. When Plaintiff reminded Rushing that he told them to ride around until they were needed, Rushing responded, "So you don't think you all need a write-up?" *Id.* at ¶s 29 & 30. Plaintiff replied, "No, but if you do, when you're finished writing, I will be standing right outside to write what I think." *Id.* at ¶ 30. Plaintiff and Byson were not written up that day. *Id.*

On Tuesday, May 17, 2016, Plaintiff and Byson were called into the office. *Id.* at ¶ 31. When Plaintiff was called in, Rushing was there along with his supervisors, Bedgood and John Rawling ("Rawling"). *Id.* at ¶ 32. Rawling stated that Plaintiff was "guilty of stealing time from the State by riding around and not working." *Id.* When Plaintiff stated that she was only doing what Rushing had told her to, Rawling responded that he did not believe her and that the GPS on Plaintiff's truck showed that it had been parked by Lake Ivan for 45 minutes. *Id.* According to Plaintiff, Rawling told her that she could either resign or challenge her termination and "be ready to have criminal charges brought against [her]." *Id.* at ¶ 33. Plaintiff chose to resign. Record Document 41-7, p. 2.

Plaintiff alleges that her reason for termination was pretextual. Record Document 1, ¶ 34. She alleges that several weeks earlier, a white man was found to have parked his vehicle for eight hours and was only given a warning. *Id.* Plaintiff also states that before her termination she had never received any discipline while at DOTD. *Id.* at ¶ 35. As to the allegation that she stole time from DOTD, Plaintiff asserts that Rushing and all of her co-workers regularly engaged in similar activities and that she was terminated for following Rushing's instructions. *Id.*

Plaintiff claims that Rushing discriminated against her because she is African-American and female. *Id.* at ¶ 36. Plaintiff also claims that her termination was in retaliation for reporting

4

Rushing's discriminatory treatment to his supervisor. *Id.* Plaintiff asserts that she is entitled to back pay, front pay, punitive damages, attorneys' fees, court costs, litigation expenses, and "other relief as the court may find just and proper under the circumstances." *Id.*

## **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in

5

support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## **LAW & ANALYSIS**

Plaintiff brings two claims under 42 U.S.C. § 2000e, also known as Title VII of the Civil Rights Act of 1964 ("Title VII"). Record Document 1, ¶ 1. Plaintiff alleges that she was subject to a hostile work environment because of her race and gender, and that she was terminated in retaliation for filing a complaint about race and gender discrimination. *Id.* at ¶s 1 & 36. The Court will analyze these claims separately.

### **I.     Hostile Work Environment**

A plaintiff may establish a Title VII violation based on race discrimination that creates a hostile work environment by proving that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). In order for race-based harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts consider the following

6

circumstances when determining whether a workplace rises to the level of a hostile work environment: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). To be actionable under Title VII, a work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Defendant argues that the incidents Plaintiff complains of do not amount to "discriminatory changes in the terms and conditions of [her] employment." Record Document 41-3, pp. 6–8. Specifically, Defendant asserts that Rushing's actions in requiring Plaintiff to provide a doctor's note to excuse her absence but not requiring the same of Tuggle are justified by Defendant's policy and procedure memorandum regarding types of leave. *Id.* at 7. This memorandum states that Defendant may require a statement from a physician to substantiate an absence "[w]hen there is reasonable doubt that the employee was ill." Record Document 41-4, p. 3. It also states that "[a]nnual leave may be granted to an employee for the purposes of rest and relaxation or to attend to personal matters." *Id.* at 2. Defendant asserts that Plaintiff's absence fell under the category of "Sick Leave," while Tuggle's absence fell under the category of "Annual Leave," and therefore Rushing had the authority to require Plaintiff to provide a doctor's note and to grant Tuggle annual leave to attend to a personal matter. Record Document 41-3, p. 7. Defendant also claims that truck assignments were made based on the needs of each day, that all trucks used by the bridge crew had air conditioning, and that at no time did Rushing assign Plaintiff to work with Byson because he could not drive or purposefully assign her to drive a vehicle without air conditioning. *Id.* at 8.

7

Finally, Defendant avers that, based on Plaintiff's own admission, her work environment became more stressful in the Spring of 2016 because of other employees' accounts of things Rushing had said, which do not amount to discriminatory changes in the terms and conditions of Plaintiff's employment. *Id.*

The Court agrees with Defendant that Plaintiff has failed to meet the elements of a hostile work environment claim. Additionally, Plaintiff's opposition brief focuses solely on her retaliation claim and appears to abandon her hostile work environment claim entirely. *See* Record Document 60. Even if this were not the case, the Court would still be compelled to find that there is no genuine issue of material fact as to whether Plaintiff was subjected to a hostile work environment because she has failed to demonstrate that she was subjected to any unwelcome harassment based on race or harassment that affected a term, condition, or privilege of her employment. *See Ramsey*, 286 F.3d at 268.

Plaintiff has failed to produce any summary judgment evidence, beyond her own subjective beliefs, that Rushing's harassment[3] was based on Plaintiff's race. *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) (per curiam). According to Plaintiff, Rushing's harassment consisted of (1) requiring Plaintiff to bring a doctor's note to excuse her absence from work, (2) assigning her a less desirable work truck and partner, and (3) making negative comments about Plaintiff to other employees outside of her presence. Record Document 1, ¶s 15–23. The only one of these allegations that could have a nexus to Plaintiff's race is Rushing's comment that if she and Bonaparte, apparently the only other African-American on the bridge crew, were on site at the same time, Rushing would not work an extra shift with them. *Id.* at 20. Plaintiff states that co-

---

[3] For the purposes of this analysis, the Court assumes *arguendo* that Rushing's conduct in this matter amounted to unwelcome harassment.

8

workers told her that Rushing made this statement but does not direct the Court to any competent summary judgment evidence in support of this point. *Id.*; *see* Fed. R. Civ. P. 56(c)(2). Without any additional facts, the Court cannot conclude that this comment was based on Plaintiff's race. The Fifth Circuit's case law is clear that "'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Gibson*, 498 F. App'x at 394 (quoting *Ramsey*, 286 F.3d at 268).

Even if Plaintiff could show that the alleged harassment was based on her race, she has also failed to demonstrate that any harassment affected a term, condition, or privilege of employment. The Supreme Court has held that Title VII does not set forth a "general civility code" and that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Lauderdale v. Tex. Dept. of Crim. Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Faragher*, 524 U.S. at 788); *see also White v. Gov't Emp. Ins. Co.*, 457 F. App'x 374, 380 (5th Cir. 2012) (per curiam) (applying this standard in a racial context). In this case, the incidents that Plaintiff complains of were not frequent or severe, were not physically threatening or humiliating, and there is no evidence that the harassment interfered with Plaintiff's work performance. *Ramsey*, 286 F.3d at 268. Even when all factual inferences are drawn in Plaintiff's favor, the harassment she alleges in this case does not rise to the level of severity required to establish a hostile work environment. *See Lee v. Reg'l Nutritional Assistance, Inc.*, 471 F. App'x 310, 311–12 (5th Cir. 2012) (per curiam) (holding that two racially charged comments by a co-worker were isolated incidents during the course of plaintiff's employment and did not establish a hostile work environment); *see also Johnson v. TCB Const. Co., Inc.*, 334 F. App'x 666, 671 (5th Cir. 2009) (per curiam) (holding that a supervisor's use of a racial slur directed at plaintiff was an

isolated incident that did not affect work performance, nor did the same supervisor's frequent use of a racial slur outside the plaintiff's presence).

By failing to demonstrate that her alleged harassment was based on race or that it affected a term, condition, or privilege of her employment, Plaintiff has failed to provide evidence that raises a genuine issue of material fact as to whether she was exposed to a hostile work environment because of her race. Accordingly, Defendant's motion for summary judgment [Record Document 41] is **GRANTED** as to Plaintiff's claim that she was subject to a hostile work environment because of her race. This claim is **DISMISSED WITH PREJUDICE**.

Plaintiff's complaint also appears to assert a hostile work environment claim based on gender. Record Document 1, ¶ 36 (stating that she believes Rushing discriminated against her because she is African American and female). The elements of a gender-based hostile work environment claim are nearly identical to a race-based hostile work environment claim, except the third factor is that the harassment was based on sex rather than race. *Reine v. Honeywell Intern. Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) (per curiam). As stated above, Plaintiff has failed to demonstrate that any harassment she experienced affected a term, condition, or privilege of her employment. Plaintiff has also failed to show that the alleged harassment was based on sex. Therefore, Defendant's motion for summary judgment [Record Document 41] is **GRANTED** as to Plaintiff's claim that she was subject to a hostile work environment because of her sex. This claim is **DISMISSED WITH PREJUDICE**.

II. **Retaliation Claim**

Plaintiff claims that she was terminated in retaliation for reporting Rushing's discriminatory treatment to his supervisor. Record Document 1, ¶ 36. Title VII prohibits an employer from taking action against an employee for, among other things, "oppos[ing] any practice made an unlawful

employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A prima facie claim of Title VII retaliation requires a plaintiff to establish that (1) she engaged in an activity protected by Title VII, (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse employment action. *Harville v. City of Hous., Miss.*, 945 F.3d 870, 879 (5th Cir. 2019). If a plaintiff can establish a prima facie case of retaliation, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). The burden then shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* At the pretext stage, the plaintiff must demonstrate "but-for causation."[4] *Garcia v. Prof'l Contract Servs, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

Defendant's motion for summary judgment focuses on the first stage of the retaliation analysis, arguing that Plaintiff has not established a prima facie case of retaliation. Record Document 41-3, p. 9. As to the first element, Defendant argues that Plaintiff was not engaged in protected activity when she contacted Bedgood, Rushing's supervisor, to ask why she was required to provide a doctor's note to excuse her absence when Tuggle was not. *Id.* According to Defendant, this inquiry was "nothing more than a clarification regarding the use of leave time." *Id.* Defendant also claims that no adverse employment action occurred in this case because Plaintiff elected to resign from employment rather than challenge her termination and risk criminal charges. *Id.*

The Court finds that Plaintiff has failed to establish a prima facie case of retaliation because she cannot show that she engaged in activity protected by Title VII. An employee has engaged in

---

[4] The Fifth Circuit does not seem to have consistently required "but-for causation" at the same step in the analysis. *Compare Garcia*, 938 F.3d at 243 (holding that the heightened but-for causation requirement applies only in the pretext stage of the *McDonnell Douglas* framework.) *with Harville*, 945 F.3d at 879 (stating that "but-for causal connection" is the third element of the prima facie stage).

11

protected activity when she has "(1) opposed any practice made an unlawful employment practice by Title VII [opposition clause] or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII [participation clause]." *Riley v. Napolitano*, 537 F. App'x 391, 392 (5th Cir. 2013) (per curiam) (quoting *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998)) (internal quotation marks omitted). Plaintiff does not allege that she participated in any formal Title VII proceeding. Therefore, any protected activity she engaged in must fall under the opposition clause of Title VII. *See* 42 U.S.C. § 2000e-3(a). The Supreme Court has held that because Title VII leaves the word "oppose" undefined, it should be given its ordinary meaning: "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 55 U.S. 271, 276 (2009) (quoting Webster's New International Dictionary 1710 (2d ed. 1957)).

As stated previously, when the burden at trial will rest on the non-moving party, the moving party on summary judgment need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *Celotex*, 477 U.S. 322–23. Plaintiff's opposition does not attempt to rebut Defendant's assertion that she did not engage in protected activity and merely asserts that she "complained about having to present a doctor's slip upon her return to work when none of her white male co-workers were ordered to do so."[5] Record Document 60, p. 6. Plaintiff may not simply rest on the allegations in her complaint or on conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence to meet her burden. *Robinson v. ICF Emergency Mgmt. Servs., LLC*, 453 Fed. Appx. 528, 531 (5th Cir. 2011)

---

[5] It is worth noting that although the opposition cites to Plaintiff's affidavit in support of this statement, Plaintiff's affidavit makes no mention of Plaintiff's phone call to Bedgood or any complaints she made about Rushing's treatment of her. *See* Record Document 60-1.

(per curiam) (citing *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The allegation in Plaintiff's complaint that she engaged in protected activity does not constitute competent summary judgment evidence. Plaintiff has failed to provide any deposition testimony, an affidavit, or point to any fact in evidence to support counsel's allegation that Plaintiff lodged a complaint about discriminatory treatment. Therefore, she has not met her burden. Because Plaintiff has not shown that she engaged in any protected activity, she cannot establish a prima facie case of retaliation under Title VII and the Court need not determine whether an adverse employment action occurred in this case. *Harville*, 945 F.3d at 879. Therefore, Defendant's motion for summary judgment [Record Document 41] is **GRANTED** as to Plaintiff's retaliation claim and this claim is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Record Document 41] is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with this ruling will be issued separately.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 19th day of March, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE